**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Southern New England, Inc.** )   | Case No.: **05-cv-10869-WGY** |
| ) | |
| Plaintiff,  ) | |
| ) | **PLAINTIFF'S MOTION FOR** |
| vs.  ) | **DEFAULT JUDGMENT** |
| ) | |
| **Michael DeSouza**  ) | |
| ) | |
| Defendant  ) | |

   Plaintiff hereby moves this Court for a Judgment by Default against the Defendant in the above-entitled action.  The Plaintiff also requests that this Court assess non-liquidated damages, after considering the Plaintiff's filings, including the Affidavit of Comcast's employee, made herewith.  The Plaintiff contends that the court should be able to assess non-liquidated damages in this action based upon the facts as determined through the Defendant's default and any facts set forth in the Plaintiff's employee's Affidavit, all in accordance with Fed. R. Civ. P. 55(b)(2).  However, should this Court determine that testimony is necessary or even helpful for the assessment of non-liquidated damages, the Plaintiff requests that such a hearing be scheduled.

   In support of this Motion, Plaintiff submits:

1. That a Default was entered against the Defendant on September 6, 2005.

2. That the Defendant has still failed to reply or otherwise defend the claims set forth in Plaintiff's Complaint;

3. That the Defendant is not an infant or incompetent;

4. That the Defendant is not in the military service; and,

5. That the Plaintiff is entitled to damages and other civil remedies as set forth below.

In further support of this Motion, please see:

1. Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.

2. Affidavit of Attorney John M. McLaughlin.

3. Affidavit of Paul Marmelo, an employee of Comcast

4. Proposed Order of Default.

**WHEREFORE** Plaintiff respectfully requests that this Court enter Default Judgment in favor of the Plaintiff and against the Defendant for the following:

Pursuant to all of the above, the Plaintiff is entitled to a Default Judgment as follows:

1. Statutory damages $7,000.00 for the violations of 47 U.S.C. § 553(a) pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and/or Title 47 U.S.C. § 553(c)(3)(B);

2. Costs $311.00 pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

   The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signals in violation of provisions of Title 47;

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961; and,

5. Attorney's fees of $500.00 pursuant to Title 47 U.S.C. 553(c)(2)(C).

Respectfully Submitted for the Plaintiff,
Comcast of Southern New England, Inc.

By Its Attorney,

| | |
|---|---|
| 10/6/2005 | ___/s/ John M. McLaughlin_____ |
| Date | John M. McLaughlin |
| | **Green Miles Lipton & Fitz-Gibbon LLP** |
| | 77 Pleasant Street |
| | P.O. Box 210 |
| | Northampton, MA 01061 |
| | Telephone: (413) 586-0865 |
| | BBO No. 556328 |

## CERTIFICATE OF SERVICE

I, John M. McLaughlin, attorney for the Plaintiff, hereby certify that on the 6th day of October 2005, a copy of the foregoing Motion, Memo and affidavits were sent via first class mail to

Michael DeSouza
12 Wordell Street
South Dartmouth, MA 02748

                                      /s/ John M. McLaughlin
                                      John M. McLaughlin

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Southern New England, Inc.** ) | Case No.: **05-cv-10869-WGY** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF JOHN M.** |
| vs. ) | **MCLAUGHLIN, ESQ. IN SUPPORT OF** |
| ) | **MOTION FOR DEFAULT JUDGMENT** |
| **Michael DeSouza** ) | |
| ) | |
| Defendant ) | |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

## GENERAL FACTUAL ASSERTIONS

1. I, John M. McLaughlin, represent the Plaintiff in the above-entitled action.

2. I am a partner at the Law Firm of Green Miles Lipton & Fitz-Gibbon LLP.

3. I have used paralegals from the firm to assist me in this case.

## FACTUAL ASSERTIONS AS TO ATTORNEY'S FEES

4. My usual hourly rate is $200.00 per hour. The usual hourly rate of the paralegals in our firm is $90.00 per hour. These rates are more than reasonable for telecommunication civil litigation specialists.

5. I am a member of the Federal Communications Bar Association and I have been heavily involved in telecommunications litigation since the early 1990's. I have represented Comcast, ATTB, Cox, DirecTV and numerous MediaOne and/or Continental Cablevision corporate entities in hundreds of cases.

6. The time records have been edited to remove confidential communications with the client. The Plaintiff reserves the right to amend its claim for attorney's fees and costs should Plaintiff's Counsel have to attend a Default Hearing and Plaintiff

Page  1

may also bear certain costs with reference to said hearing. The details of the time records to-date are set forth below. Also, I have already reduced the billable time from the actual time spent on reviewing and sorting my time records to take into account the first circuit case of *Brewster v. Dukakis*, 3 Fed.3d 488, (1st Cir. 1993) which provides that attorney's fees for work on affidavit for fees should be billed at a reduced rate. The time referenced below includes all of the time claimed for this action.

**ATTORNEY'S HOURS:**

| | | |
|---|---|---|
| 4/27/05 | Review Draft of Complaint | .30 |
| 9/1/2005 | Review Draft of Default Documents | .20 |
| 9/20/05 | Draft Motion and Memorandum and Affidavit | 1.00 |
| 10/6/2005 | Complete Default Judgment Documentation | 1.00 |
| **SUBTOTAL of hours** | | **2.50** |

At $200.00 per hour

**Total amount**                                             **$500.00**

7.     No attorney's fees have been paid by the Plaintiff in the case at bar because the case is covered by a contingency fee agreement and there has not been and may never be any actual recovery.

### OTHER FACTUAL ASSERTIONS

8.     The Default of the Defendant has been entered for failure to appear in this action.

9.     The undersigned believes the Court can assess statutory damages in this matter without testimony. Yet, if the court believes testimony is necessary or even helpful, the Plaintiff will fully cooperate and provide fact witnesses and/or expert witnesses if required.

10. On information and belief, the Defendant is not an infant or an incompetent and the Defendant is not in the military service

Subscribed and sworn to, under the pains and penalties of perjury, this 6th day of October 2005.

                                                  /s/ John M. McLaughlin
John M. McLaughlin
**Green Miles Lipton & Fitz-Gibbon LLP**
77 Pleasant Street
P.O. Box 210
Northampton, MA 01060
Telephone: (413) 586-0865
BBO No. 556328

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Comcast of Southern New England, Inc. ) | Case No.: **1:05-cv-10869-WGY** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF** |
| vs. ) | **PAUL MARMELO** |
| ) | |
| Michael DeSouza ) | |
| ) | |
| Defendant ) | |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

1. My name is Paul Marmelo.

2. I am employed by Comcast as an Area Piracy Specialist.

3. I am familiar with the business records of Comcast associated with the Defendant, Michael DeSouza.

4. I have been trained and I am familiar with the testing of converters/descramblers to determine if such devices have been modified to receive unauthorized interception of signals.

5. A particular converter/descrambler, bearing serial number CJ93ABGZQ, was issued by a predecessor in interest of Comcast to the Defendant on January 24, 1990.

6. Converter/descrambler CJ93ABGZQ was returned to a predecessor in interest of Comcast by the Defendant on May 1, 2002.

7. Shortly after Converter/descrambler CJ93ABGZQ (hereinafter the "device") was returned to the Plaintiff, the device was tested by an employee of a predecessor in interest of Comcast and the test evidenced the fact that this device had been electronically modified while in the possession of the Defendant so as to allow for

Page   1

the unauthorized reception of secured cable system programming including premium and pay per view channels.

8. Significantly, the account history reveals that the Defendant *did not* order any premium channels or pay-per-view offerings while in possession of the device. This Defendant's account history also reveals that the Defendant *did* purchase non-premium stations while in possession of the device

9. An account history that evidences no purchases of premium channels and no purchases of pay-per-view offerings is consistent with the covert use of a descrambling device. It should also be realized that an account history that evidences the subject individual paying for non-premium cable television channels is also is consistent with the covert use of a descrambling device.

10. A subscriber must purchase some non-premium cable television stations (e.g. MTV, The History Channel, etc.) just to get signals into the home such that the scrambled television stations, the premium channels and the pay-per-view channels could then be descrambled. Also, the non-premium cable television stations were offered to subscribers in groupings of channels ("tiers"). These channels were either delivered in groups to the subscriber in a *non-scrambled fashion* or they were simply not delivered into the home at all. A descrambling device would have been of no assistance in overtly obtaining the non-premium cable television stations. This explains why an individual with a descrambling device might still be paying the cable television company for non premium cable television stations while utilizing a descrambler to descramble the premium channels and pay-per-view offerings.

11. Based upon the facts known to me and *without any input from the Defendant*, it is theoretically possible that the Defendant could have modified his converter/descrambler to get all premium channels and pay-per-view offerings as soon as this device went into his account; that was clearly over a decade ago. However, in light of all of the factors to be considered in this particular case, it is reasonable to infer at least seven years of unauthorized interception (147 months).

12. During the above referenced 147 month period charges and offerings varied significantly but taking into account the length of time, the variations in price and variations in offerings, it is reasonable to state that the Defendant, through the use of the device, would have had access to all of the:

   a. Premium channels with an *approximate on average* price of $65.00 per month. This $65.00 figure represents the value of the premium channels the Defendant had access to over and above the non premium stations he was actually paying for.

   b. Pay per view movie offerings with an *approximate on average* price of $3.95 per movie. There were numerous movies offered per month.

   c. Adult pay per view movie offerings with an *approximate on average* price of $8.00 per movie. There were numerous Adult movies offered per month

   d. Special event pay per view offerings (e.g.; boxing or wrestling match) with an *approximate on average* price of $30.00 per special event. On average there was at least one special event per month.

13. Also of assistance in calculating the amount of unauthorized interception is the fact that Comcast did a detailed analysis of its legitimate, paying subscribers in a similar

New England franchise as to their pay-per-view purchasing in the month of February, 2003. This analysis showed that a statistically significant number (.17%) of its legitimate, paying, high-end purchasers purchased fourteen (14) or more pay-per-view movies during that particular month, an average cost of $55.30 per month. I will call this "the high end purchaser" analysis.

14. I am also aware through notification by our Counsel that this Court has estimated actual damages in the past on a per-month basis by calculating the value of the premium channels obtained plus the value of ten (10) pay-per-views and four (4) of the more expensive pay-per-views. I will call the analysis which is based upon this Court's prior estimates as the "reasonable inference of use" analysis.

15. Using the high end purchaser analysis and taking into account the fact that the Defendant was receiving $65.00 in premium channels through the use of the descrambling device and inferring that he was obtaining at least $55.30 per month of pay-per-view signals, it is easy to infer that the Defendant was obtaining at least $120.30 in unauthorized interception per month over the above referenced 147 month period of time; for a estimated total actual damages of $17,684.10.

16. Using the reasonable inference of use analysis and taking into account the fact that the Defendant was receiving $65.00 in premium channels through the use of the descrambling device and inferring that he was obtaining at least $71.50 per month of pay-per-view signals, it is easy to infer that the Defendant was obtaining at least $136.50 in unauthorized interception per month over the above referenced 147 month period of time; for a estimated total actual damages of $20,065.50.

Subscribed and sworn to, under the pains and penalties of perjury, this 23rd day of

September 2005.

                                                                      */s/ Paul Marmelo*
                                                                      Paul Marmelo

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **Comcast of Southern New England, Inc.** ) | Case No.: **05-cv-10869-WGY** |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER OF** |
| ) | **DEFAULT JUDGMENT** |
| **Michael DeSouza** ) | |
| Defendant ) | |
| ) | |
| ) | |

The Court, having considered the Plaintiff's Motion for Default Judgment and the accompanying documentation filed with said motion, finds that the Plaintiff is entitled to a Default Judgment as follows:

1. $_____ in statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and/or Title 47 U.S.C. § 553(c)(3)(B); for the violation of 47 U.S.C. § 553(a);

2. Costs $_____ pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A), as follows:

   "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in accordance with Title 47; and

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961;

5. Attorney's fees of $_____ pursuant to Title 47 U.S.C. 553(c)(2)(C).

**SO ORDERED**.

Dated: _____          _____
                                  United States District Court Judge